In the Matter of Mahabub
ALAM, Debtor.

FDS National Bank, Plaintiff,

v.

Mahabub Alam, Defendant.

Bankruptcy No. A03–96116–PWB.
Adversary No. 03–6465.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 24, 2004.

Jin Choi, Jin Choi & Associates, P.C., Atlanta, GA, for Debtor.

David R. Sicay–Perrow, Maysoun B. Iqal, Sicay–Perrow & Knighten, PC, Atlanta, GA, for Plaintiff.

## ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

PAUL W. BONAPFEL, Bankruptcy Judge.

FDS National Bank ("Plaintiff") asserts that the Chapter 7 debtor, Mahabub Alam ("Debtor"), owes $5,168.34 for purchases or cash advances on a credit card within 30 days of his bankruptcy filing. Plaintiff's complaint seeks a determination that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) due to the Debtor's false pretenses, false representations, or actual fraud and invokes 11 U.S.C. § 523(a)(2)(C), which provides that a consumer debt under an open end credit plan is presumed to be nondischargeable if the debt is for "luxury goods or services" or cash advances within 60 days of the bankruptcy filing.

■■■ Plaintiff has moved for entry of default judgment. Entry of default judgment is discretionary. *See* FED.R.CIV.P. 55(b) (applicable under FED. R. BANKR. P. 7055) ("Judgment by default *may* be entered" by the court) (emphasis added). "A defendant's default does not in itself warrant the court in entering default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Construction Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Because the complaint does not allege facts sufficient to establish false pretenses or a false representation, because it lacks specific factual allegations from which a finding of actual, subjective fraudulent intent to establish actual fraud could be inferred, and because the allegations do not show that the presumption of § 523(a)(2)(C) applies here, the Court will not enter default judgment.

## I. § 523(a)(2)(A)

■■■ Section 523(a)(2)(A) provides an exception from a chapter 7 discharge for a debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The burden is upon the creditor to prove nondischargeability under this section. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994).

The Court reads the complaint as asserting two alternative grounds for nondischargeability. The first is that the debt was incurred through false pretenses or false representations. The second is that Debtor engaged in actual fraud. (In determining whether to enter default judgment on the complaint, the Court does not consider the dischargeability presumption of § 523(a)(2)(C) because, as explained in Part II, the complaint's allegations do not establish that it applies here.) The Court will consider each theory in turn.

### A. False Pretenses or False Representation

■■■ The complaint bases the false pretenses or false representation claim on two types of alleged representations. The first is that, when Debtor obtained the account, he represented he would pay all amounts due in accordance with the credit agreement. This representation is immaterial to nondischargeability and requires no discussion beyond stating the established principle that breach of a mere promise to pay on a contract, without more, does not constitute false representation, false pretenses, or actual fraud. *E.g., Chase Manhattan Bank (U.S.A.), N.A. v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr. N.D.Ga.1985) (Kahn, J.). If it were otherwise, every default by every debtor failing to pay a just debt would qualify as a false

representation or actual fraud, an obviously absurd result.

■ The false pretenses or false representation claim thus depends on the assertion that each use of Debtor's available credit for a purchase or cash advance constituted a representation that he had the ability and intent to repay the debts thereby incurred. (Complaint, ¶¶ 6, 11). The complaint does not assert any express false or fraudulent representation that Debtor made to Plaintiff after the card was issued or, indeed, any express representation by Debtor at all. The false pretenses or false representation claim, therefore, is grounded in the proposition that each use of the credit card constitutes an implied representation by the user to the issuer. *See, e.g., AT & T Univ. Card Svcs., Inc. v. Mercer (In re Mercer)*, 246 F.3d 391, 404–405 (5th Cir.2001); *Rembert v. AT & T Univ. Card Svcs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998).

The decisions of the Eleventh Circuit in *First Nat. Bank of Mobile v. Roddenberry (In re Roddenberry)*, 701 F.2d 927 (11th Cir.1983), and of the District Court for this district in *Citibank (South Dakota), N.A. v. Kim*, Civ. No. 1:02–CV–0314–JOF (N.D.Ga. Apr. 1, 2003) (slip opinion), preclude use of the implied representation theory to establish false pretenses or false representations. In *Roddenberry*, the Eleventh Circuit determined that application of the false pretenses or false representation exception to a credit card transaction under former § 17a(2) of the Bankruptcy Act of 1898 "must involve a determination of whether the [creditor] unconditionally revoked the cardholder's right to use and possession of that card and if so when the cardholder became aware of such revocation." *Roddenberry*, 701 F.2d at 928. The *Roddenberry* court held that a creditor assumes a risk of nonpayment "until it is clearly shown that

the [creditor] unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of this revocation." *Id.* at 932 (emphasis in original). Such use after revocation, the court explained, is an "affirmative representation that one is entitled to possess and use the card," *id.*, and is essential to establish false pretenses or false representation based on use of a credit card. Thus, the court ruled that only a debt incurred after clear revocation has been communicated to the cardholder is nondischargeable under the false pretenses or false representation exception. Under *Roddenberry*, then, implied representations such as those asserted by Plaintiff do not establish exception of a debt from discharge on these grounds.

In *Kim*, the District Court applied the *Roddenberry* analysis in a case under § 523(a)(2)(A), which replaced § 17a(2) and has the same operative language, "false pretenses or false representation." There, the bankruptcy judge had refused to apply the implied representation theory to find a credit card debt nondischargeable under § 523(a)(2)(A). The District Court affirmed, ruling that, under *Roddenberry*, the false pretenses or false representation exception was not applicable in the absence of a showing that the debtor used the card after the creditor had revoked it.

In accordance with *Roddenberry* and *Kim*, this Court concludes that nondischargeability based on false pretenses or false representation requires an express, affirmative representation and rejects the implied representation theory that Plaintiff's complaint pleads. *Accord, e.g., Citibank (South Dakota), N.A. v. Brobsten (In re Brobsten)*, 2001 WL 34076352 (Bankr. C.D.Ill. Nov. 20, 2001); *Bank of America, N.A. v. Way (In re Way)*, 260 B.R. 291 (Bankr.M.D.Fla.2000); *Universal Bank,*

N.A. v. Kuntz (In re Kuntz), 249 B.R. 699 (Bankr.N.D.Tex.2000); *AT & T Univ. Card Svcs. v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr.N.D.Ill.1996); *Chase Manhattan Bank (U.S.A.), N.A. v. Carpenter (In re Carpenter)*, 53 B.R. 724, 728 (Bankr. N.D.Ga.1985).

██ Even if use of a credit card could be considered to be a representation by a debtor of intent to repay, the debt is nondischargeable under the false pretenses or false representation dischargeability exception only if the representation was knowingly false. To establish this element, the creditor must show that the debtor possessed an actual, subjective fraudulent intent. *Field v. Mans*, 516 U.S. 59, 67–68, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). As discussed below, this subjective intent is not established solely by the fact that an insolvent debtor used a credit card and did not have the ability to pay the debt.

█ Moreover, even if the use of a credit card could be considered an implied representation of ability to pay, such a representation is not covered by § 523(a)(2)(A). Section 523(a)(2)(A) excludes "a statement respecting the debtor's ... financial condition" from the type of false pretenses or false representations that give rise to a nondischargeable debt. Instead, nondischargeability based on misrepresentation of financial condition is governed by § 523(a)(2)(B), which requires that such representations be written. If the use of a card is an implied representation or statement of one's ability to pay, it is necessarily an unwritten statement of one's financial condition. As such, it cannot serve as a basis for nondischargeability under § 523(a)(2)(A). *See, e.g., Bank of New York v. Le (In re Le)*, 222 B.R. 366, 370 (Bankr.W.D.Okla.1998); *AT & T Univ. Card Svcs. Corp. v. Feld (In re Feld)*, 203 B.R. 360, 367 n. 10 (Bankr.E.D.Pa.1996);

Citibank *(South Dakota), N.A. v. Senty (In re Senty)*, 42 B.R. 456, 459 (Bankr. S.D.N.Y.1984).

The allegations of the complaint, then, do not establish an essential element of false pretenses or false representation: the existence of a representation by Debtor of something other than financial condition. Default judgment, therefore, on this ground is not proper.

## B. Actual Fraud

The complaint recites that Debtor used the credit card within 30 days of filing, lacked the ability to pay and was insolvent; it then alleges that "therefore" he had the specific intent not to pay when he incurred the debt. (Complaint, ¶ 11). The complaint thus appears to assert its claim of actual fraud as a conclusion based on the same facts alleged in support of its false pretenses or false representation theory. To be sure, there are no other factual allegations from which actual fraud could be inferred. Nevertheless, the Court will read the complaint as advancing a second theory that does not rely on implied representations: that the Debtor's use of the card with no intent of paying amounts to actual fraud. The Court therefore considers whether default judgment is appropriate under either theory of actual fraud.

The first reading of the complaint raises the question of whether implied representations are sufficient to establish actual fraud. The key operative fact in an actual fraud claim of the type presented here is that, at the time a debtor incurred debts, he did not intend to pay them. Under the first reading of the complaint, this essential element is based solely on allegations that Debtor used the card within 30 days of filing bankruptcy, was insolvent, did not have the current or prospective ability to pay, and did not pay. Put another way, this theory is that intent not to pay when

debt is incurred may be inferred solely from inability to pay. The actual fraud claim is thus grounded in the same implied representations discussed in Section A.

The District Court in *Kim, supra,* addressed the issue of whether "actual fraud" under § 523(a)(2)(A) could be established based on implied representations like those alleged in this proceeding. The court noted that *Roddenberry, supra,* did not directly address this issue because it was decided under § 17a(2) of the Bankruptcy Act, which referred only to "false pretenses" or "false representations" and did not include "actual fraud" as a basis for excepting a debt from discharge. "Actual fraud" as a separate basis for excepting a debt from discharge was added in 1978 with the passage of § 523(a)(2)(A) as part of the Bankruptcy Code.

The District Court in *Kim* ruled that, although *Roddenberry* did not specifically address actual fraud, the decision "made clear that only an affirmative misrepresentation could render a debtor's credit card debt nondischargeable." *Kim,* slip op. at 6. The court quoted *Roddenberry's* analysis:

> Purchases made with knowledge that one is not entitled to either use or possession [of a credit card] constitute the type of deception intended to be exempted from discharge. It is more than an intentional concealment of insolvency; it is an affirmative misrepresentation that one is entitled to possess and use the card.

*Id., quoting Roddenberry,* 701 F.2d at 932.

The District Court then stated its holding: "Consequently, regardless of whether a claim of nondischargeability alleges false pretenses, false representation, or actual fraud, *Roddenberry* indicates that an implied representation can never serve as the basis for the claim." *Kim,* slip op. at 7.

■ *Kim* correctly states the law and is in accord with the principle that inability to pay a debt when it is incurred does not, without more, establish actual fraud. *E.g., Alvi, supra,* 191 B.R. at 733 ("[O]bjective ability to pay at the time of the transaction is not the issue. The issue is the Debtor's subjective intent to repay the debt."); *Carpenter, supra,* 53 B.R. at 729. Therefore, the Court will not enter default judgment on the claim that the debt is nondischargeable due to actual fraud shown only by the implied representations that the complaint alleges.

Under the second reading, the complaint alleges actual fraud based on the fact that, at the time Debtor incurred the charges, he did not intend to pay them. This theory does not include an allegation of a false representation and, as such, is not based on implied representations.

■■ The existence of a fraudulent misrepresentation is not necessary to an actual fraud claim under § 523(a)(2)(A). Rather, "actual fraud" is a much broader term than false pretenses or false representation and may encompass "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell (In re Cantrell),* 217 F.3d 890, 893 (7th Cir.2000), *quoting* 4 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 623.08[1][e] (15th ed.2000). Thus, as the court in *McClellan* observed, *id.* at 893:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*Stapleton v. Holt,* 207 Okla. 443, 250 P.2d 451, 453–54 (Okla.1952).

*Accord, Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (6th Cir. BAP 2001) ("When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right," the debtor has committed actual fraud.)

 Under these principles, a debtor commits actual fraud for purposes of § 523(a)(2)(A) if the debtor uses a credit card without the actual, subjective intent to pay the debt thereby incurred. *E.g., Citibank (South Dakota), N.A. v. Brobsten (In re Brobsten),* 2001 WL 34076352 (Bankr.C.D.Ill. Nov. 20, 2001); *cf. Chase Manhattan Bank (U.S.A.), N.A. v. Carpenter (In re Carpenter),* 53 B.R. 724, 730 (Bankr.N.D.Ga.1985) (holding that representation is necessary element of actual fraud and that use of credit card is representation of intent to pay, but finding creditor had not proved subjective intent not to pay).

*Roddenberry* and *Kim* do not require a different conclusion. Their holdings and analyses involve determination of nondischargeability based on implied representations and do not address the issue of actual fraud based on a showing of actual subjective intent not to pay at the time charges are incurred. Thus, if a creditor establishes that a debtor had such an intent (based on evidence other than implied representations), the debt is nondischargeable because of the debtor's actual fraud.

 Although a number of objective facts and circumstances may be relevant to determination of this intent, the ultimate factual issue is the debtor's subjective intent not to pay. This factual issue cannot be determined by a formulaic use of objective criterion and, critically, is quite distinct from the question of ability to pay. *E.g., Brobsten, supra,* at *4–5; *Alvi, supra,* 191 B.R. at 733. *See general-*

*ly,* Margaret Howard, *Shifting Risk and Fixing Blame: The Vexing Problem of Credit Card Obligations in Bankruptcy,* 75 Am. Bankr. L.J. 63, 97–100 (2001). The Court therefore considers whether entry of default judgment is appropriate based solely on the allegation in this complaint that Debtor did not intend to pay when he incurred the debts.

 As a matter of notice pleading under Fed.R.Civ.P. 8 (applicable under Fed. R. Bankr. P. 7008), a complaint alleging no more than that a debtor did not intend to pay a debt when he incurred it arguably states a claim for nondischargeability based on actual fraud. (The Court here passes the technical questions of whether a debtor could challenge such pleading on the ground that it fails to state fraud with particularity as required by Fed. R. Civ. P. 9 (applicable under Fed. R. Bankr. P. 7009) and whether a debtor could successfully move for a more definite statement under Fed.R.Civ.P. 12(e) (applicable under Fed. R. Bankr. P. 7012)). Because a defendant's default constitutes an admission of the complaint's material facts under Rule 8(d), it would follow that the requisite fraudulent intent could be sufficiently established to permit entry of default judgment.

The Court in the exercise of its discretion will not, however, enter default judgment in a nondischargeability proceeding alleging actual fraud based on technical compliance with notice pleading rules. Unless there are specific factual allegations from which actual, subjective fraudulent intent may be inferred or Plaintiff produces evidence at a hearing that proves such intent, entry of default judgment based on actual fraud is not appropriate. The Court finds authority for this determination in the provision of Fed.R.Civ.P. 55(b)(2) (applicable under Fed. R. Bankr.

P. 7055) that a court may conduct a hearing on a motion for default judgment if it is necessary "to establish the truth of any averment by evidence or to make an investigation of any other matter;" the Court finds this procedure necessary in order to assure that a creditor and its counsel have grounds for alleging a debtor's actual, subjective fraudulent intent under the standards of FED. R. BANKR.P. 9011 and in view of the potential abuse of using § 523(a)(2)(A) complaints to extract settlements or reaffirmations from debtors. *See* Howard, *supra*, at 140–41.

## II. § 523(a)(2)(C)

 Section 523(a)(2)(C) provides that, for purposes of dischargeability determinations under § 523(a)(2)(A),

> consumer debts owed to a single creditor and aggregating more than $1,150 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,150 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are *presumed to be nondischargeable;* "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act.

11 U.S.C. § 523(a)(2)(C) (emphasis added). Unless the debt is a consumer debt under an open end credit plan for "luxury goods and services" or cash advances, the presumption of nondischargeability under this section does not apply.

The complaint does not allege facts to show that the presumption applies. Even if the complaint had alleged that the debt is a consumer debt under an open end credit plan, it alleges only that Debtor incurred "charges and/or cash advances" in the total amount of the claim. (Complaint ¶ 8). Thus, the complaint does not specify how much of the debt represents cash advances and does not allege that any charges were for "luxury goods and services." No account statements are attached to the complaint or default judgment motion that would reveal the nature of any of the transactions. Although an affidavit from a recovery manager for Plaintiff in support of Plaintiff's motion for default judgment states that Debtor's charges were for "jewelry, electronics, housewares, and clothing," these categories themselves do not prove that any of the charges were for luxury items.

The allegations in a complaint itself must serve as a sufficient basis for the entry of judgment. There can be no admission by default where the "facts are not well pleaded." *Nishimatsu Construction Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). In this case, necessary elements of § 523(a)(2)(C) have not been alleged; as a result, the facts essential to application of its presumption cannot be admitted by Debtor. Consequently, the presumption of nondischargeability of the debt under § 523(a)(2)(C) is inapplicable to consideration of whether Plaintiff is entitled to default judgment.

## III. Conclusion

The Court declines to enter default judgment and denies Plaintiff's motion. The Court rejects Plaintiff's reliance on implied representations with regard to its § 523(a)(2)(A) claim, whether advanced to support nondischargeability based on false pretenses, false representation, or actual fraud. The Court declines to enter default judgment based on a conclusory allegation of actual fraud. In order to obtain relief

on its § 523(a)(2)(A) claim based on false pretenses or false representation, Plaintiff must show an actual affirmative misrepresentation made by Debtor to Plaintiff (as well as all other elements of a false pretenses or false representation claim) or use of the credit card after clear communication of its revocation. To obtain a nondischargeability determination based on actual fraud, Plaintiff must make a showing of sufficient facts from which the Court can draw an inference of the Debtor's actual, subjective fraudulent intent that is essential to an actual fraud claim. Plaintiff may invoke § 523(a)(2)(C)'s nondischargeability presumption only by showing all of its essential elements.

Plaintiff may amend its complaint to address these issues within 30 days after entry of this Order. Plaintiff shall serve any amendment on Debtor and his counsel in accordance with FED. R. BANKR.P. 7004. Debtor shall have 30 days after service to file responsive pleadings. Counsel for Debtor is reminded of the obligation to represent Debtor in this proceeding. *In re Egwim,* 291 B.R. 559 (Bankr.N.D.Ga. 2003) (Bonapfel, J.). If no response is timely filed to an amended complaint, Plaintiff may file a second motion for default judgment.

Alternatively, if Plaintiff declines to amend the complaint and elects to stand on its complaint as filed, the Court will schedule a hearing at which Plaintiff may introduce evidence to establish a claim for nondischargeability under § 523(a)(2)(A) on the basis of Debtor's actual fraud. Plaintiff shall advise the Court of such election by filing a request for a hearing within 30 days after entry of this Order.

If Plaintiff does not timely amend the complaint or request a hearing on the actual fraud theory, the Court will enter an order and judgment dismissing the complaint. Accordingly, it is

**ORDERED** that Plaintiff's motion for default judgment is **DENIED** and that Plaintiff proceed as set forth above; and it is

**FURTHER ORDERED** that, if Plaintiff fails to amend and serve its complaint or to request a hearing as set forth above within 30 days from entry of this Order, the Court will enter an order and judgment dismissing the complaint.